IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

**GERALDINE PATTERSON**,

    Plaintiff,

vs.                                            No. **CIV 03-569 MCA/KBM**

**STATE OF NEW MEXICO**,
**CHILDREN, YOUTH AND**
**FAMILIES DEPARTMENT**,

    Defendant.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on *Defendant's Motion for Summary Judgment* [Doc. No. 23] filed July 5, 2004. Having reviewed the pleadings of record, the relevant law, and otherwise being fully advised in the premises, the Court finds that Plaintiff has failed to file a response to Defendant's motion within the time permitted by D.N.M. LR-Civ. 7.6 and that the motion states good cause, based on undisputed facts and applicable Tenth Circuit precedent, for entering summary judgment against Plaintiff.

## A. BACKGROUND

For purposes of Defendant's motion, the following factual allegations in Plaintiff's *First Amended Complaint* [Doc. 2] are undisputed. Plaintiff Geraldine Patterson is a Hispanic woman who, at the time of the events in question, was employed by Defendant

1

New Mexico Department of Children, Youth, and Families (DCYF) as a client service agent (CSA). [Doc. 2 at 2]. Plaintiff began working for Defendant in 1990 as a CSA II. Because of her excellent work, Plaintiff was promoted in 1994 to a CSA IV. In December 2000, however, Plaintiff requested to be transferred to another supervisor "due to the feeling she had of a growing mistrust of her current supervisor Ermelinda Perez due to Ermelinda's unprofessional conduct while at the job." [Id. at 3]. Plaintiff's request was denied. [Id.].

From January 2001 until April 2001, Perez retaliated against Plaintiff by "restructuring" Plaintiff's job, assigning her duties more suitable to a CSA II, and prohibiting Plaintiff from training new employees. [Doc. 2 at 3]. On April 24, 2001, Plaintiff was assigned to supervisor Susan Drake. Drake created a hostile work environment for Plaintiff by intimidating her, warning her that hard work lay ahead, and commenting on the problems Plaintiff had posed for Perez. After informing Drake of her intention to do so, Plaintiff filed a grievance on May 3, 2001. The hostile work environment then escalated, leading to reprimands and the placement of Plaintiff on leave-without-pay (LWOP) status. [Id. at 4].

On February 21, 2002, Plaintiff suffered an on-the-job head and neck injury. [Doc. 2 at 4]. Plaintiff's physician restricted her from lifting anything heavier than five pounds or engaging in repetitive movement. As a result of her inability to perform the essential functions of her job, Plaintiff was placed on LWOP status. Though he was twice asked by Plaintiff's supervisors to provide a medical evaluation, Plaintiff's physician, Dr. Fields, refused, "since it [was] something that he [did] not do in his job." [Id. at 5]. On July 16, 2002, Plaintiff requested that Defendant provide her with a doctor who would be able to

2

release her for work.  On August 6, 2002, Plaintiff received a letter informing her that she either had to (1) return to work with or without accommodations, (2) find work with Defendant that involved tasks she could perform, or (3) be separated from service.  Plaintiff then filed a charge of discrimination with the Albuquerque office of the Equal Employment Opportunity Commission (EEOC), alleging violations of the Americans with Disabilities Act (ADA).  [Id. at 5-6].

On August 26, 2002, Plaintiff received a written reprimand in connection with her conduct and behavior during a telephone conversation with Drake.  Plaintiff immediately informed her EEOC officer of the reprimand.  [Doc. 2 at 6].  Plaintiff underwent neck surgery on October 25, 2002 and requested LWOP until November 2002. Because her next appointment with Dr. Fields was not scheduled until January 14, 2003, Plaintiff requested an extension to her LWOP.  At the January 14, 2003 appointment, Dr. Fields did not release Plaintiff to work but, instead, scheduled another appointment for February 13, 2003.  [Id. at 7].  Plaintiff requested another extension to her LWOP but never received a written response. Dr. Fields released Plaintiff to work on January 30, 2003 and said he would draft a letter for Plaintiff's supervisors.  [Id.].

On February 10, 2003, Plaintiff informed her supervisors that her next appointment with her surgeon was scheduled for February 11, 2003 and that she was still awaiting Dr. Fields's letter.  [Doc. 2 at 7].  On February 14, 2003, at her supervisors' direction, Plaintiff faxed release forms to her office.  Later that day, Plaintiff learned that she had been sent a letter of separation dated February 13, 2003, effective March 1, 2003.  Plaintiff received the

3

letter on February 18, 2003, along with a policy statement explaining that the decision to terminate her was nonappealable.

Plaintiff then initiated this lawsuit, alleging racial discrimination in violation of Title VII (Count I), age discrimination in violation of the Age Discrimination in Employment Act (ADEA) (Count II), disability discrimination in violation of the Rehabilitation Act (Count III), and the creation of a hostile work environment in violation of Title VII (Count IV). [Doc. 2 at 8-10]. Defendant, pursuant to Fed.R.Civ.P. 56, now moves for summary judgment on all counts. [Doc. 23]. Plaintiff has not filed a response. [See generally Dkt. in case no. 03cv00569]

**B. ANALYSIS**

Summary judgment under Fed.R.Civ.P. 56(c) "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading. . . ." Fed.R.Civ.P. 56(e). Rather, "the adverse party's response . . . must set forth specific facts showing that there is a genuine issue for trial." Id. Judgment is appropriate as a matter of law if the nonmoving party has failed to make an adequate showing on an essential element of its case, as to which it has the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986); Lopez v. LeMaster, 172 F.3d 756, 759 (10th Cir. 1999).

In the District of New Mexico, the local rules further provide that "[a] memorandum in opposition to the motion [for summary judgment] must contain a concise statement of the material facts as to which the party contends a genuine issue does exist." D.N.M. LR-Civ. 56.1(b). Additionally, "[t]he failure of a party to file and serve a response in opposition to a motion within the time prescribed for doing so constitutes consent to grant the motion." D.N.M. LR-Civ. 7.1(b). The time prescribed for filing a response to a summary-judgment motion is 14 calendar days from the date of service of the motion. See D.N.M. LR-Civ. 7.6(a).

### 1. Title VII (Counts I and IV)

Defendant moves to dismiss Plaintiff's Title VII claims on the ground that Plaintiff has failed to exhaust her administrative remedies. [Doc. 24 at 20-21]. Title VII of the Civil Rights Act makes it "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2002e-2(a)(1). To establish a prima facie case of discrimination under Title VII, the plaintiff must show that (1) she belongs to a protected class; (2) she was qualified for her job; (3) despite her qualifications, she was discharged; and (4) the job was not eliminated after her discharge. Perry v. Woodward, 199 F.3d 1126, 1135 (10th Cir. 1999). Once the plaintiff makes her prima facie case, the burden shifts to the defendant to articulate some legitimate, nondiscriminatory reason for its actions. McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973).

The plaintiff, however, "must generally exhaust his or her administrative remedies prior to pursuing a Title VII claim in federal court." Simms v. Oklahoma ex rel. Dept. of Mental and Substance Abuse Servs., 165 F.3d 1321, 1326 (10th Cir. 1999). Accordingly, "a plaintiff normally may not bring a Title VII action based upon claims that were not part of a timely-filed EEOC charge for which the plaintiff has received a right-to-sue letter." Id. To be timely, a charge must be filed with the EEOC within 180 days or with a state agency within 300 days of the complained-of conduct. Under certain circumstances, however, amendments may relate back to the filing date of the original charge and, therefore, be considered timely even if the amendment takes place after the prescribed deadlines. Id.

In this case, the undisputed evidence reveals that Plaintiff filed two separate charges of discrimination with the EEOC, the first on August 29, 2002 and the second on May 2, 2003. In both cases, however, Plaintiff alleged discrimination on the basis of disability only. [Doc. 24 at 20-21]. Indeed, Plaintiff's right-to-sue letter expressly notified her that she was authorized to sue Defendant "under Title I of the Americans with Disabilities Act of 1990, 42 U.S.C. 12111, et seq., and [] Title V, Section 503 of the Act, 42 U.S.C. 12203." [Doc. 1, attached Feb. 13, 2003 Notice of Right to Sue]. There is also no evidence in the record that Plaintiff took steps to amend her EEOC complaint so as to include charges of discrimination based on race, sex, or national origin. See Simms, 165 F.3d at 1326. Plaintiff's failure to exhaust her administrative remedies is fatal to her Title VII claims. To the extent that Plaintiff is consequently left with only her disability-based discrimination claims, Title VII provides her no relief. See Cisneros v. Wilson, 226 F.3d 1113, 1132 (10th

6

Cir.2000), *overruled on other grounds*, Bd. of Tr. of Univ. of Ala. v. Garrett, 531 U.S. 356 (2001) (because Title VII, by its express terms, makes it unlawful to discriminate on the basis of race, color, religion, sex, or national origin, Title VII is not the proper vehicle by which to allege age- and/or disability-based discrimination). Accordingly, the Court concludes that Defendant is entitled to summary judgment with respect to Plaintiff's Title VII claims.

### 2. ADEA (Count II)

Plaintiff next asserts that Defendant engaged in age-based discrimination in violation of the ADEA. [Doc. 2 at 8-9]. The ADEA provides, in pertinent part, that "[i]t shall be unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a). To establish a prima facie case of age discrimination, the plaintiff must show by a preponderance of the evidence that she was (1) within the protected age group; (2) doing satisfactory work (qualified for the position); (3) discharged (or adversely affected by the defendant's employment decision); and (4) replaced by a younger person. Jones v. Unisys Corp., 54 F.3d 624, 630 (10th Cir. 1995).

As an initial matter, the Court notes that nothing in the pleadings indicates Plaintiff's age at the time of the events in question. For purposes of Defendant's motion, however, the Court will assume without deciding that Plaintiff was in fact within the protected age group. See 29 U.S.C. § 631(a) ( "The prohibitions in this chapter shall be limited to individuals who are at least 40 years of age"); Kimel v. Florida Bd. of Regents, 528 U.S. 62, 67 (2000) ([T]he

7

Act . . . covers individuals age 40 and over."). Even with the benefit of that assumption, the Court finds that Plaintiff has not established her prima facie case of discrimination, inasmuch as Plaintiff has not shown that she was qualified to perform the essential functions of a CSA. See Perry, 199 F.3d at 1135.

The undisputed facts reveal that the essential functions of Plaintiff's position included occasional lifting (less than 25% of the time) of more than 45 pounds; frequent lifting (25-75% of the time) of between 15 and 44 pounds; safely transporting clients to and from various cities within New Mexico; and such repetitive-action tasks as typing, filing, and copying. [Doc. 24, Exh. 2, July 2, 2004 affidavit of Barbara V. Auten, attached Client Service Agent position description]. Yet Plaintiff's physician had restricted her from lifting more than five pounds or engaging in repetitive movement. [Doc. 2 at 5]. Additionally, Plaintiff has stated that she felt that, because of buzzing and dizziness she was experiencing, it would have been unsafe for her to have transported clients from Las Cruces to Albuquerque. [Doc. 24, Exh. 1, Apr. 20, 2004 deposition testimony of Geraldine Patterson at 194, 271-73]. In light of the foregoing, the Court concludes that Plaintiff was not qualified to do her job. Plaintiff also has not demonstrated that, once terminated, she was replaced by a younger employee. See Jones, 54 F.3d at 630. Accordingly, the Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's ADEA claims.

### 3. Rehabilitation Act (Count III)

Plaintiff's final claim is that Defendant engaged in disability-based discrimination in violation of the Rehabilitation Act. [Doc. 2 at 9]. The Rehabilitation Act provides, in

pertinent part, that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance . . . ." 29 U.S.C. § 794(a). To establish a prima facie case of employment discrimination under the Rehabilitation Act, the plaintiff must demonstrate that (1) she is disabled under the Act, (2) she would be "otherwise qualified" to participate in the program, (3) the program receives federal financial assistance, and (4) the program has discriminated against the plaintiff. McGeshick v. Principi, 357 F.3d 1146, 1150 (10th Cir. 2004). The standards used to determine violations of the Rehabilitation Act are the same standards applied under the Americans with Disabilities Act, except that the term "disabled" is given a broader definition under the ADA. Id.

Assuming without deciding that Plaintiff was disabled for purposes of the Rehabilitation Act, the Court must next determine whether Plaintiff was a "qualified" individual. In so doing, the Court employs a two-part test, asking first whether Plaintiff was able to perform the "essential functions" of her job and, if not, whether a reasonable accommodation would have allowed her to do so. See Brockman v. Wyoming Dept. of Family Servs., 342 F.3d 1159, 1168 (10th Cir. 2003). As explained in Section B.2., the Court concludes that Plaintiff was not qualified to perform the essential functions of her job. [See Doc. 2 at 5; Doc. 24, Exh. 1, Apr. 20, 2004 deposition testimony of Geraldine Patterson at 194, 271-73; Id., Exh. 2, July 2, 2004 affidavit of Barbara V. Auten, attached Client Service Agent position description].

The Court further finds that Plaintiff has not demonstrated that reasonable accommodations would have allowed her to perform the essential functions of a CSA. "[A] plaintiff bears the ultimate burden of proving she is 'qualified' within the meaning of the Rehabilitation Act." Woodman v. Runyon, 132 F.3d 1330, 1344 (10th Cir. 1997). In this case, however, Plaintiff acknowledges that on two separate occasions, her physician refused to complete a work capacity evaluation on the ground that that "[was] something that he [did] not do in his job." [Doc. 2 at 5]. Moreover, the undisputed evidence reveals that as of approximately two weeks before Plaintiff was notified of her impending termination, neither her physician nor her surgeon had yet released her to return to work. [Doc. 24 at 14]. The information Defendant did have was that Plaintiff was restricted from lifting anything heavier than five pounds or engaging in repetitive action, both of which were essential functions of the CSA position. [Doc. 2 at 5; Doc. 24, Exh. 2, July 2, 2004 affidavit of Barbara V. Auten, attached Client Service Agent position description]. An employer is not required to hold a position open for an indeterminable amount of time, nor is it required to strip a position of its essential functions. See Smith v. Blue Cross Blue Shield of Kansas, Inc., 102 F.3d 1075, 1076-77 (10th Cir. 1996). Additionally, where a reasonable accommodation might allow an employee to return to work, the employee's refusal or failure to provide medical information necessary to a determination of what might constitute such an accommodation precludes recovery for disability-based discrimination. Templeton v. Neodata Servs., Inc., 162 F.3d 617, 619 (10th Cir. 1998) (concluding that employee's failure to provide necessary medical information to employer doomed her ADA claim, as employer could not be expected to

10

propose reasonable accommodation absent critical information on employee's medical condition and limitations it imposed). Because Plaintiff has failed to establish her prima facie case, the Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's Rehabilitation Act claims.

## C. CONCLUSION

Based on the undisputed facts, the Court concludes that Defendant is entitled to judgment as a matter of law with respect to each of Plaintiff's claims of discrimination under Title VII (Counts I and IV), the ADEA (Count II), and the Rehabilitation Act (Count III).

**IT IS, THEREFORE, ORDERED** that *Defendant's Motion for Summary Judgment* [Doc. No. 23] is **GRANTED**.

**SO ORDERED** this 30th day of August, 2004, in Albuquerque, New Mexico.

**M. CHRISTINA ARMIJO**
United States District Judge